## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

ALEXANDER LEE ALLEN,

               Plaintiff,

    v.

MICHAEL WELLS, et al.,

              Defendants.

CIVIL ACTION NO. 1:22-CV-00010

(MEHALCHICK, M.J.)

### MEMORANDUM

*Pro se* prisoner-Plaintiff Alexander Lee Allen ("Allen") commenced this civil rights action by filing a complaint pursuant to 42 U.S.C. § 1983 on January 4, 2022, against Defendants Pennsylvania State Police Trooper Michael Wells ("Trooper Wells"); Honorable Jessica E. Brewbaker, a sitting judge in the Court of Common Pleas of Cumberland County, and Mark W. Martin, a sitting Magisterial Judge in the Court of Common Pleas of Cumberland County in District 09-3-05 ("Judicial Defendants"); Toby Catone, PA-C, and William Cattell, MD ("Medical Defendants"); and District Attorney of Cumberland County Merle L. Ebert ("DA Ebert"), Assistant District Attorney for Cumberland County Kimberly A. Metzger ("ADA Metzger"), and Assistant Public Defender for Cumberland County Lindsey M. Renard ("APD Renard") ("Cumberland County Defendants"). (Doc. 1). Allen is a prisoner currently incarcerated at the State Correctional Institution at Camp Hill ("SCI-Camp Hill"). Before the Court is a motion to dismiss filed by Trooper Wells (Doc. 34), a motion to dismiss filed by Medical Defendants (Doc. 36), a motion to dismiss filed by Judicial Defendants (Doc. 38), and a motion to dismiss filed by Cumberland County Defendants (Doc. 43). The parties have consented to proceed before the undersigned United States Magistrate Judge pursuant to Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). (Doc. 39).

For the following reasons, the complaint will be dismissed for failure to prosecute and failure to comply with Court Orders.

## I.   BACKGROUND AND PROCEDURAL HISTORY

On January 4, 2022, Allen commenced this 42 U.S.C. § 1983 action by filing a complaint against Defendants alleging deprivations of his civil rights as well as various state law claims. (Doc. 1). When the complaint was initially filed, Allen was incarcerated at the Cumberland County Prison in Carlisle, Pennsylvania. (Doc. 1).

On January 25, 2022, Allen filed a motion to proceed *in forma pauperis*, which the Court granted on August 2, 2022. (Doc. 5; Doc. 12). Allen filed a motion for discovery and request for subpoena on October 20, 2022, and a request for a subpoena on October 24, 2022. (Doc. 31; Doc. 32). On November 4, 2022, Trooper Wells filed a motion to dismiss, as well as a brief in support. (Doc. 34; Doc. 35). On November 7, 2022, Medical Defendants filed a motion to dismiss, as well as a brief in support. (Doc. 36; Doc. 37). Judicial Defendants filed a motion to dismiss on November 7, 2022, and a brief in support on November 17, 2022. (Doc. 38; Doc. 40). On November 18, 2022, Allen filed a motion for partial summary judgment. (Doc. 41). Medical Defendants filed a response to Allen's motion for discovery and request for subpoenas on November 21, 2022. (Doc. 42). On December 5, 2022, Cumberland County Defendants filed a motion to dismiss, as well as a brief in support. (Doc. 43; Doc. 44). On December 9, 2022, Allen filed a "notice of retaliation." (Doc. 45).

On January 4, 2023, the Court denied Allen's motion for discovery and request for discovery and denied Allen's motion for partial summary judgment. (Doc. 46). In addition, the Court directed Allen to file his briefs in opposition to Defendants' motions to dismiss on or before January 24, 2023, and warned Alen that his failure to timely file his opposition may

result in the motions being deemed unopposed and granted without a merits analysis. (Doc. 46). On January 5, 2023, Allen filed a letter with the Court requesting an update of the case. (Doc. 47). On January 20, 2023, the Order dated January 4, 2023, was returned as undeliverable as Allen had been moved to SCI-Camp Hill, and remailed to Allen. (Doc. 48). On February 23, 2023, the Court issued an Order directing the Clerk of Court to resent a copy of the Order dated January 4, 2023, to Allen, and directed Allen to file his brief in opposition to Defendants' motions to dismiss on or before March 9, 2023. (Doc. 49). The Court again warned Allen that if opposition briefs are not timely filed, he will be deemed not to oppose Defendants' motions. (Doc. 49).

On March 10, 2023, Allen filed a motion for an extension of time to file his brief in opposition. (Doc. 50). On March 20, 2023, the Court granted Allen's motion, directing him to file a brief in opposition on or before April 10, 2023, and reminding Allen that if opposition briefs are not timely filed, he will be deemed not to oppose Defendants' motions. (Doc. 51). On March 31, 2023, Allen filed a second motion for an extension of time to respond to Defendants' motions to dismiss. (Doc. 52). On April 5, 2023, the Court granted Allen's motion, directing him to file his briefs in opposition on or before April 24, 2023. (Doc. 53). On April 21, 2023, Allen filed a third motion for an extension of time to respond to Defendants' motion to dismiss. (Doc. 54). Cumberland County Defendants filed a brief in opposition to Allen's motion on April 26, 2023. (Doc. 55). On May 9, 2023, the Court granted in part and denied in part Allen's motion, directing him to file opposition briefs on or before May 23, 2023. (Doc. 56). As of the date of this Order, Allen has still not responded to any of the motions to dismiss.

II.   <u>STANDARD OF REVIEW</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions' . . . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

Additionally, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, a well-pleaded complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. There is no requirement that the pleading be specific or probable. *Schuchardt*, 839 F.3d at 347 (citing *Phillips v. Cty. of Allegheny*, 515 F.3d 224, at 233-234 (3d Cir. 2008). Rule 8(a) requires a "showing that 'the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (quoting Fed. R. Civ. P. 8(a)(2)); *see also Phillips*, 515 F.3d at 233 (citing *Twombly*, 550 U.S. at 545).

With the aforementioned standards in mind, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Further, the Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

A. Claims brought under 42 U.S.C. § 1983

Allen's complaint asserts several federal civil rights claims pursuant to 42 U.S.C. § 1983. Section 1983 provides a private cause of action with respect to violations of federal constitutional rights. The statute provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma v. Tuttle*, 471 U.S. 808, 816 (1985). To state a § 1983 claim, a plaintiff must demonstrate that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). Further, "a defendant in a civil rights action 'must

have personal involvement in the alleged wrongs to be liable,' and 'cannot be held responsible for a constitutional violation which he or she neither participated in nor approved.'" *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (internal citations omitted). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

## III.   DISCUSSION

### A. ALLEN IS DEEMED NOT TO OPPOSE THE MOTIONS TO DISMISS.

At the onset, under the Local Rules of this Court, Allen should be deemed no to oppose the pending motions to dismiss since he has failed to timely oppose those motions. Local Rule 7.6 imposes an affirmative duty on a litigant to respond to motions and provides that "[a]ny party who fails to comply with this rule shall be deemed not to oppose which motion." At the time that he filed the complaint, Allen received a copy of the Court's Standing Practice Order, which set forth his obligations with respect to responding to a motion. (Doc. 3).

In this case, Allen has not complied with Local Rule 7.6 or the Court's Orders to file opposition briefs. These procedural defaults compel the Court to consider:

> [A] basic truth: we must remain mindful of the fact that "the Federal Rules are meant to be applied in such a way as to promote justice. *See* Fed. R. Civ. P. 1. Often that will mean that courts should strive to resolve cases on their merits wherever possible. However, justice also requires that the merits of a particular dispute be placed before the court in a timely fashion . . . ."

> *Lease v. Fishel*, 712 F. Supp. 2d 359, 371 (M.D. Pa. 2010) (quoting *McCurdy v. American Bd. of Plastic Surgery*, 157 F.3d 191, 197 (3d Cir. 1998).

With this basic truth in mind, the Court acknowledges a fundamental guiding tenant of the legal system. A failure on the Court's part to enforce compliance with the rules, and impose the sanctions mandated by those rules when the rules are repeatedly breached, "would actually violate the dual mandate which guides this court and motivates our system of justice:

'that courts should strive to resolve cases on their merits whenever possible [but that] justice also requires that the merits of a particular dispute be placed before the court in a timely fashion.'" *Lease*, 712 F. Supp. 2d at 371. Therefore, the Court is obligated to ensure that one party's refusal to comply with the rules does not lead to an unjustified prejudice to those parties who follow the rules.

Such basic principles of fairness apply here. In this case, Allen failed to file briefs in opposition to the pending motions to dismiss after being ordered to do so a number of times and after being warned that his failure to file a brief in opposition may be construed as his abandoning this case. These failures now compel the Court to deem Allen to not oppose Defendants' motions to dismiss.

Nevertheless, Allen's failure to file briefs in opposition alone is not sufficient for the Court to dismiss the case. In *Stackhouse v. Mazurkiewicz*, 951 F.2d 29 (3d Cir. 1991), the Third Circuit reversed a district court's dismissal based on the *pro se* plaintiff's failure to file a brief in accordance with a local rule of court. The Third Circuit stated that failure to obey the local rule should not form the basis for dismissal without an analysis of the merits of the case. *Stackhouse*, 951 F.2d at 30. The court noted that dismissal was not to be ruled out if the party was represented by an attorney and in fact did not oppose the motion. *Stackhouse*, 951 F.2d at 30. The court also noted: "Nor do we suggest that if a party fails to comply with the rules after a specific direction to comply from the court, the rule cannot be invoked. Thus, our holding is not broad." *Stackhouse*, 951 F.2d at 30.

Although this caveat from the *Stackhouse* case might suggest that the Court could grant the pending motion to dismiss based on Allen's failure to file a brief in opposition after being ordered to do so by the Court, the Third Circuit has subsequently declined "to adopt an

- 8 -

interpretation of *Stackhouse* under which a district court may dismiss a case solely because a plaintiff misses a briefing deadline set forth in a local rule or court-ordered briefing schedule." *Hernandez v. Palakovich*, 293 F. App'x 890, 895 (3d Cir. 2008). Rather, the Third Circuit has held that before dismissing a case as a sanction for failure to follow a court rule or court order, a court must consider the factors set forth in the seminal *Poulis* case. *Hernandez*, 293 F. App'x at 894 (citing *Poulis v. State Farm Fire and Casualty Co.*, 747 F.2d 863, 868 (3d Cir. 1984)); *see also Shuey v. Schwab*, 350 F. App'x 630, 633 (3d Cir. 2009) ("*Poulis* has been cited too often and is too deeply ingrained in the jurisdiction of this court and the direct courts of this circuit for a court to assume that a party's failure to respond to a motion to dismiss can be regarded as an abandonment of the claim. *Poulis* governs the District Court's decision to dismiss the Shuey's claim, and it was error to dismiss without first considering the *Poulis* factors."). Thus, the Court turns to a consideration of the *Poulis* factors.

B. CONSIDERATION OF THE *POULIS* FACTORS WARRANTS DISMISSAL OF THIS CASE OR, IN THE ALTERNATIVE, DEFENDANTS' MOTIONS TO DISMISS WILL BE GRANTED.

Federal Rule of Civil Procedure 41(b) provides that an action may be involuntarily dismissed "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order." Further, the rule permits *sua sponte* dismissals by the court. *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962); *Hewlett v. Davis*, 844 F.2d 109, 114 (3d Cir. 1988) (same). "The authority of a court to dismiss *sua sponte* for lack of prosecution has generally been considered an inherent power, governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link*, 370 U.S. at 630–31; *see also Mindek v. Rigatti*, 964 F.2d 1369 (3d Cir. 1992). Specifically, a plaintiff's failure to comply with a court order constitutes a failure to prosecute his action, and therefore his action is subject to dismissal pursuant to Fed. R. Civ. P. 41(b). A court's

decision to dismiss for failure to prosecute is committed to the court's sound discretion and will not be disturbed absent an abuse of discretion. *See Emerson v. Thiel Coll.*, 296 F.3d 184, 190 (3d Cir. 2002). In evaluating whether an action should be dismissed for failure to prosecute, a court must balance six factors:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party . . . was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

*Poulis,* 747 F.2d at 868.

The *Poulis* factors are not "a magic formula whereby the decision to dismiss or not to dismiss a plaintiff's complaint becomes a mechanical calculation . . . ." *Mindek*, 964 F.2d at 1373. No one factor is determinative and not all of the *Poulis* factors must be met to warrant dismissal. *Mindek*, 964 F.2d at 1373; *Hicks v. Feeney*, 850 F.2d 152, 156 (3d Cir. 1988). Instead, the decision must be made in the context of the court's extended contact with the litigant. Dismissal for failure to prosecute is appropriately labeled a "drastic sanction," however, because it is "deemed to be an adjudication on the merits, barring any further action between the parties." *Sebrell ex rel. Sebrell v. Phila. Police Dep't*, 159 F. App'x 371, 373 (3d Cir. 2005) (not precedential) (citing *Landon v. Hunt,* 977 F.2d 829, 833 (3d Cir. 1992); Fed. R. Civ. P. 41(b)). In light of this framework, the Court finds that a careful assessment of the *Poulis* factors in the case at bar weighs heavily in favor of dismissing this action.

Here, by failing to respond to the Court's Orders, it appears that Allen has abandoned this action. Allen's failure to respond to Defendants' motions to dismiss and failure to respond to the Court's Orders renders any future adjudication of his claims impossible. *See Lookingbill v. Fetrow*, No. 4:13-CV-01636, 2015 WL 4077999, at *8 (M.D. Pa. July 6, 2015) (dismissing

complaint pursuant to Rule 41(b) for failure to respond to defendants' motion to dismiss). Thus, the Court will dismiss this action pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.

### 1.  Plaintiff's Personal Responsibility

Looking to the *Poulis* factors, the Court finds that a consideration of the first factor, the extent of the party's personal responsibility, shows that the delays in this case are entirely attributable to Allen. Because Allen is a *pro se* litigant, he is solely responsible for prosecuting his claims. *See Hoxworth v. Blinder Robinson & Co.*, 980 F.2d 912, 920 (3d Cir. 1992). "As a general rule, a *pro se* litigant is responsible for his failure to comply with court orders." *Lopez v. Cousins*, 435 F. App'x 113, 116 (3d Cir. 2011) (not precedential); *see also Emerson*, 296 F.3d at 191; *Winston v. Lindsey*, Civ. No. 09-224, 2011 WL 6000991, at *2 (W.D. Pa. Nov. 30, 2011) (concluding that a *pro se* litigant "bears all of the responsibility for any failure to prosecute his claims"). Allen has neglected to litigate this case and failed to file a brief in opposition to the pending motions to dismiss, as required by the Local Rules and as ordered by the Court. *See Lookingbill*, 2015 WL 4077999, at *4. On January 4, 2023, Allen was first directed to file briefs in opposition to Defendants' motion, and notified that failure to timely file his briefs may result in the motions being deemed unopposed and granted without a merits analysis. (Doc. 46). Allen was again directed to file opposition briefs on February 23, 2023, March 20, 2023, April 5, 2023, and May 9, 2023. (Doc. 49; Doc. 51; Doc. 53; Doc. 56). As of the date of this Memorandum Opinion, Allen has failed to file briefs in opposition or comply with the Court's Orders. Accordingly, the first *Poulis* factor weighs in favor of dismissal.

### 2.  Prejudice to the Moving Party

As for the second *Poulis* factor, a finding of prejudice does not require "irremediable harm." *Adams v. Trs. of N.J. Brewery Emps.' Pension Tr. Fund*, 29 F.3d 863, 873-74 (3d Cir. 1994). Rather, "the burden imposed by impeding a party's ability to [effectively prepare] a full and complete trial strategy is sufficiently prejudicial." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003). Examples of prejudice are "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." *Scarborough v. Eubanks,* 747 F.2d 871, 876 (3d Cir. 1984). Prejudice for purposes of the *Poulis* analysis, however, does not mean irremediable harm. *Ware,* 322 F.3d at 222. "[T]he burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy is sufficiently prejudicial." *Ware,* 322 F.3d at 222.

Here, the Court finds that Allen's failure to litigate this case or comply with the Court's Orders now wholly frustrates and delays resolution of this action. Going forward, such failure to litigate would prejudice Defendants, who without timely responses by Allen could not seek a timely resolution of the case. *See Azubuko v. Bell National Organization,* 243 F. App'x 728 (3d Cir. 2007) (failure to file amended complaint prejudices defense and compels dismissal). Accordingly, the undersigned finds that the second *Poulis* factor weighs in favor of dismissal.

### 3.  History of Dilatoriness

"Extensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders." *Adams,* 29 F.3d at 874; *see also Emerson,* 296 F.3d at 191 (per curium) (finding a history of dilatory conduct where the plaintiff repeatedly requested stays and failed to comply with court-mandated deadlines). Conversely, "conduct that occurs one or two times is insufficient

to demonstrate a history of dilatoriness." *Briscoe v. Klaus*, 538 F.3d 252, 261 (3d Cir. 2008) (citation omitted). In deciding whether a history of dilatory conduct exists, this Court must evaluate "a party's problematic acts . . . in light of its behavior over the life of the case." *Adams*, 29 F.3d at 875. Here, the Court has afforded Allen more than one extension of time to file his briefs in opposition to Defendants' motions to dismiss. (Doc. 46; Doc. 49; Doc. 51; Doc. 53; Doc. 56). Allen has failed to timely file opposition briefs despite the fact that the Court warned him that if he failed to file a brief, the Court may deem him to have abandoned this action. In sum, Allen was given opportunity after opportunity to file briefs in opposition, but he still failed to do so. Accordingly, Allen's actions demonstrate a history of dilatoriness that weighs in favor of dismissal.

### 4.   Willful Conduct or Bad Faith

The fourth *Poulis* factor requires the Court to consider whether Allen's conduct reflects mere inadvertence or negligence, as opposed to "strategic," "intentional or self-serving behavior." *Adams*, 29 F.3d at 875-76. "Under this factor, the District Court must consider whether the conduct was the type of willful or contumacious behavior which [can be] characterized as flagrant bad faith." *Briscoe*, 538 F.3d at 262 (quotation omitted). Here, Allen was repeatedly ordered to file briefs in opposition to Defendants' motions to dismiss, but he has failed to do so. Moreover, Allen was warned of the possible consequences of failing to file a brief in opposition. At this point in the case, Allen has failed to comply with the Court's instructions directing him to take specific actions in this case and advising him how to do so. The Court is thus compelled to conclude that his actions are not accidental or inadvertent, but rather reflect an intentional disregard for the Court's directives and this case. *See Gilyard*

*v. Dauphin Cty. Work Release*, No. 10-1657, 2010 WL 5060236, at *2 (M.D. Pa. Dec. 6, 2010).

Thus, the fourth *Poulis* factor weighs in favor of dismissal.

### 5. Availability of Alternative Sanctions

The fifth *Poulis* factor examines the effectiveness of sanctions other than dismissal. 747 F.2d at 868. Generally, "sanctions less than dismissal [are] ineffective when a litigant, such as [Shehadeh], is proceeding *pro se*." *See Lopez,* 435 F. App' x at 116; *Emerson*, 296 F.3d at 191 (per curium); *Nowland v. Lucas*, No. 1:10-CV-1863, 2012 WL 10559, at *6 (M.D. Pa. Jan. 3, 2012) ("This case presents such a situation where the plaintiff's status as a *pro se* litigant severely limits the ability of the court to utilize lesser sanctions to ensure that this litigation progresses in an orderly fashion."). Under the instant circumstances where the Court is faced with the complete lack of cooperation on the part of the individual who brought the action, the only appropriate sanction is dismissal. Otherwise the case would linger indefinitely on the Court's docket. Allen is proceeding *pro se* and *in forma pauperis*, and there is no evidence to support a reasonable inference that he would be able to pay monetary sanctions. Therefore, monetary sanctions, including attorney's fees and costs, would not be an effective sanction in this case. Moreover, Allen's failure to comply with the Court's Orders leads to an inference that further orders to him would not be effective. In this case, no sanction short of dismissal would be effective. *See Lookingbill*, 2015 WL 4077999, at *4. Accordingly, the fifth *Poulis* factor weighs in favor of dismissal.

### 6. Meritoriousness of Plaintiff's Claims

The final *Poulis* factor enjoins the Court to consider the meritoriousness of Allen's claims. 747 F.2d at 868. A claim is deemed meritorious when "the allegations of the pleadings, if established at trial, would support recovery by plaintiff . . . ." *Poulis*, 747 F.2d at

870. "Generally, in determining whether a plaintiff's claim is meritorious, [courts] use the standard for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Briscoe*, 538 F.3d at 263 (citing *Poulis*, 747 F.2d at 869-70). Defendants have presented strong arguments for why the Court should dismiss Allen's complaint.

According to the complaint, Allen had a mental health crisis and psychotic episode on June 27, 2021, in which he attempted to commit suicide by either blowing himself up or burning himself alive by trying to catch his vehicle on fire. (Doc. 1, at 6-7). Allen alleges that he is a fifty-five year old, mentally disabled, African-American man "who has suffered from severe bipolar disorder and manic depression[.]" (Doc. 1, ¶ 1). Allen explains that he was prescribed psychiatric medications "over the years," from various health care facilities "on more than one occasion," which "moderate or control" his symptoms. (Doc. 1, ¶ 1). Allen asserts that he has lived in Cumberland County, Pennsylvania, since 2015, and that "Defendants to this cause of action and the state or local government agencies or departments they represent have therefore previously interacted with [him] as a direct result of his mental illness and are fully aware that [he] suffers from serious mental disabilities." (Doc. 1, ¶ 2). The causes of action set forth in the complaint arise out of Allen's subsequent arrest, medical treatment, and legal proceedings. The Court will address each claim in turn.

i.   *Heck v. Humphrey*

As an initial matter, to the extent that Allen challenges his conviction and subsequent detention, such relief is barred by the United States Supreme Court's holding in *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). In *Heck*, the Supreme Court held that: "to recover damages [or other relief] for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence

invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" *Heck*, 512 U.S. at 486-87 (footnote and internal citation omitted). In other words, "a prisoner cannot use § 1983 to obtain damages where success would necessarily imply the unlawfulness of a (not previously invalidated) conviction or sentence." *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005).

In his complaint, Allen acknowledges that his conviction has not been invalidated or reversed. (Doc. 1, at 17) (noting that he "has endured several months of confinement" on his allegedly illegal conviction). A review of his state court docket confirms this. *See Commonwealth v. Allen*, No. CP-21-CR-0001719-2021. Consequently, Allen's claims are barred by *Heck v. Humphrey*. *See, e.g.*, *Nash v. Kenney*, 784 F. App'x 54, 57 (3d Cir. 2019) ("Nash's malicious-prosecution and speedy-trial claims—which challenge his post-arraignment detainment—are barred by the favorable-termination rule of *Heck v. Humphrey*"); *Washington v. State Municipality Philadelphia City*, No. 20-CV-690, 2020 WL 1922904, at *3 (E.D. Pa. Apr. 21, 2020) ("Washington's malicious prosecution claim fails because, if his convictions have not been invalidated, he cannot establish favorable termination."). That said, these claims must be dismissed without prejudice to Allen's ability to file a new complaint challenging the same conduct if his conviction is later overturned.

### j.   Claims against Trooper Wells

In the complaint, Allen asserts the following claims against Trooper Wells in his individual and official capacity: violation of his Fifth Amendment *Miranda* rights; violation

of due process and equal protection rights; and state intentional torts of negligence and intention infliction of emotional distress. (Doc. 1, ¶ 17).

The complaint sets forth the following assertions of fact as related to Trooper Wells. On June 27, 2021, Allen's wife informed him that she did not want to be married any longer, which caused him to experience a "mental health crisis and psychotic episode." (Doc. 1, ¶ 4). Allen set his mother-in-law's car on fire, doused himself in lighter fluid, and attempted to set himself on fire. (Doc. 1, ¶ 4). After police arrived and attempted to apprehend Allen, Trooper Wells and other Pennsylvania State Troopers allegedly interviewed Allen's wife and mother-in-law, who informed the troopers that Allen suffered from mental illness, may have taken illicit substances or alcohol, and may be reacting to the news of the divorce. (Doc. 1, ¶ 5). Allen's mother-in-law did not want to press criminal charges and wanted him to received mental health treatment. (Doc. 1, ¶ 5). Trooper Wells and the other troopers transported Allen to the Carlisle Pennsylvania State Police station, where Allen complained that his skin was on fire. (Doc. 1, ¶ 6). The unidentified troopers escorted Allen to the garage to allow him the opportunity to wash the lighter fluid off of his skin for five minutes and gave Allen a blanket. (Doc. 1, ¶ 6). Allen contends he was questioned by Trooper Wells and other troopers for approximately two and a half hours. (Doc. 1, ¶ 6). Allen alleges Trooper Wells contacted his wife "multiple times" after his arrest to allegedly communicate that he "was going to see to it that [Allen] was sentences to at least 20 years in prison for his behavior on June 27, 2021. (Doc. 1, ¶ 8). Allen maintains that his interracial relationship with his wife and wife's family "remain[s] an unpopular and disdained social concept in Cumberland County." (Doc. 1, ¶ 9). After Allen was arrested, he was transported to Cumberland County Prison, where he allegedly received insufficient medical attention. (Doc. 1, ¶ 10).

Turning to a review of the above-mentioned causes of action, Allen first claims Trooper Wells "coerced him to waive his rights under *Miranda* and answer police questioning in violation of the Due Process and Equal Protection Clauses of the Federal Constitution." (Doc. 1, ¶ 17). Allen also attempts to allege Trooper Wells violated his Fifth Amendment right by interrogating him knowing that he suffered from mental illness. (Doc. 1, ¶ 17).

The Fifth Amendment protects against compelled self-incrimination and provides, in relevant part, that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. A Fifth Amendment violation of the constitutional right to be free from self-incrimination occurs only when one is compelled to be a witness against himself in a criminal case. *See Chavez v. Martinez*, 538 U.S. 760, 770 (2003) (holding that a police sergeant's coercive questioning of defendant did not violate the Fifth Amendment absent the use of defendant's statements in a criminal case against him); *Renda v. King*, 347 F.3d 550, 557-58 (3d Cir. 2003) (finding that a custodial interrogation not preceded by Miranda warnings did not violate arrestee's Fifth Amendment right against self-incrimination because her statements were not used at trial). As Allen is awaiting trial, he has not yet been compelled to be a witness against himself. Therefore, in this regard, a Fifth Amendment violation has not occurred.

In *Miranda v. Arizona*, the Supreme Court addressed the constitutional issue of "the admissibility of statements obtained from a defendant questioned while in custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. 436, 445 (1966). "[T]here can be no doubt that the Fifth Amendment privilege is available outside of criminal court proceedings and serves to protect persons in all settings in which their freedom of action is curtailed in any significant way from being compelled to incriminate themselves." *Miranda,*

384 U.S. at 467. To protect this right of the utmost sanctity, the Supreme Court has imposed "procedural safeguards", including *Miranda* warnings and the "right to counsel" during custodial interrogation. *Miranda*, 384 U.S. at 444. Yet, these procedural safeguards are not substantive rights as the right protected is the right to be free from self-incrimination. *Renda*, 347 F.3d at 557. Accordingly, the Third Circuit has held that "a plaintiff may not base a § 1983 claim on the mere fact that the police questioned her in custody without providing *Miranda* warnings when there is no claim that the plaintiff's answers were used against her at trial." *Renda*, 347 F.3d at 552 (citing *Chavez v. Martinez*, 538 U.S. 760 (2003), *Giuffre v. Bissell*, 31 F.3d 1241 (3d Cir. 1994)). Rather, it is the "use of coerced statements during a criminal trial . . . that violates the Constitution." *Renda*, 347 F.3d at 559.

Here, Allen's allegation of a constitutional violation is wholly conclusory because he does not describe what self-incriminating information he allegedly told Trooper Wells or how his right against self-incrimination was violated. Allen's Fifth Amendment claims must be dismissed because "[q]uestioning a plaintiff in custody without providing *Miranda* warnings is not a basis for a § 1983 claim as long as the plaintiff's statements are not used against [him] at trial." *Renda*, 347 F.3d at 557; *see e.g., Perez v. Farrell*, No. 3:21-CV-170, 2021 WL 7208427, at *5 (M.D. Pa. Dec. 15, 2021), *report and recommendation adopted*, No. CV 3:21-170, 2022 WL 35778 (M.D. Pa. Jan. 4, 2022) (dismissing a plaintiff's fifth amendment claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) because plaintiff did not allege that he provided a statement to the police or that his statements were used against him at trial). Although Allen states his own personal characteristics and that he was questioned despite feeling physical discomfort, it is unclear from the complaint to elicit the details of the interrogation, the length of the detention,

and the nature of questioning. Thus, the complaint does not sufficiently allege a Fifth Amendment claim.

Second, Allen alleges that Trooper Wells violated his Fourteenth Amendment due process rights when he questioned Allen at the police station even though Allen complained that his skin felt like it was on fire, and continued to question Allen for two and a half hours after Allen was hosed down with water and despite Allen's continual complaints that his skin felt like it was on fire. (Doc. 1, ¶¶ 6-7, 17). To the extent that Allen also asserts this claim under the Fifth Amendment, it is duplicative of his Fifth Amendment claim. (Doc. ¶ 17). The Supreme Court has explicitly held that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997); *see also Betts v. New Castle Youth Development Ctr.*, 621 F.3d 249, 260-61 (3d Cir. 2010). This claim is better addressed under the more specific constitutional amendment, the Fifth Amendment, and thus, must be dismissed with prejudice. *See Lanier*, 520 U.S. at 272 n.7.

In the complaint, Allen also conclusively states that Trooper Wells discriminated against Allen based upon his race and disability in violation of the Fourteenth Amendment Equal Protection Clause. (Doc. 1, ¶¶ 6-7, 17). The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. Equal Protection does not require that all persons be treated alike; instead, a plaintiff must allege that the differential treatment from those similarly situated was unreasonable or involved a fundamental interest or individual discrimination. *See Tigner v. Texas*, 310 U.S. 141, 147 (1940); *Price v. Cohen*, 715 F.2d 87, 91 (3d Cir. 1983). Here, Allen

asserts he was discriminated against on the basis of race or disability. (Doc. 1, ¶¶ 6-7, 17). However, he does not allege any facts from which it can reasonably be inferred that he was treated differently than other similarly situated individuals, a necessary element of an equal protection claim. *See Hill v. Borough of Kutztown,* 455 F.3d 225, 239 (3d Cir. 2006); *Oliveira v. Twp. of Irvington,* 41 F. App'x 555, 559 (3d Cir. 2005). Accordingly, the complaint fails to state an equal protection claim upon which relief may be granted.

Finally, Allen asserts state law negligence and intentional infliction of emotional distress claims against Trooper Wells. (Doc. 1, ¶¶ 6-7). Trooper Wells argues that these claims fail because any claim against Trooper Wells in his official capacity is barred by the doctrine of sovereign immunity. (Doc. 35, at 11-14). The Eleventh Amendment to the United States Constitution recognizes the sovereign immunity of a state from suit in federal court by private parties against the state unless waived by the state. *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267 (1997); *Alden v. Maine,* 527 U.S. 706, 712-713 (1999). This includes not only immunity from suits brought against the state itself, but also suits brought against state agencies and state officials in their official capacity. *Edelman v. Jordan,* 415 U.S. 651, 663 (1974); *Lavia v. Pennsylvania, Dept. of Corrections,* 224 F.3d 190, 195 (3d Cir. 2000); *MCI Telecom. Corp. v. Bell Atl. Pa.,* 271 F.3d 491, 503–04 (3d Cir. 2001); *Foye v. Wexford Health Sources Inc.,* 675 F. App'x 210, 213 (3d Cir. 2017). Pursuant to 1 Pa. C.S.A. § 2310, officials and employees of the Commonwealth of Pennsylvania, "acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." There are ten (10) enumerated exceptions in which the Commonwealth has waived sovereign immunity for negligent acts involving: (1) vehicle liability; (2) medical-professional liability; (3) care,

custody, or control of personal property; (4) Commonwealth real estate, highways, and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody, or control of animals; (7) liquor store sales; (8) National Guard activities; (9) toxoids and vaccines; and (10) sexual abuse. *See* 42 Pa. C.S.A. § 8522(a), (b). Because the legislature has waived the general grant of sovereign immunity only in these ten (10) instances, the exceptions must be strictly construed. *See Moser v. Heistand*, 681 A.2d 1322, 1326 (Pa. 1996) (citation omitted). Conduct of an employee is within the scope of employment if " 'it is of a kind and nature that the employee is employed to perform; [and] it occurs substantially within the authorized time and space limits . . . .' " *Thomas v. Shutika*, No. 4:12-CV-692, 2014 WL 2514817, at *7 (M.D. Pa. June 4, 2014) (citations omitted).

As a general matter, subject only to ten specific statutory exceptions, this sovereign immunity bars state law tort claims like those alleged here, since Commonwealth employees are immune from liability for either negligence or intentional torts. *McGrath v. Johnson*, 67 F. Supp. 2d 499, 511 (E.D. Pa. 1999), *aff'd*, 35 F. App'x 357 (3d Cir. 2002). In fact, courts have repeatedly concluded that claims for intentional infliction of emotional distress brought against Commonwealth employees arising out of actions taken by those employees within the scope of their official duties are barred by sovereign immunity. *See e.g., Ray v. Pennsylvania State Police*, 654 A.2d 140, 141 (Pa. Commw. Ct. 1995), *aff'd*, 676 A.2d 194 (1996) (citation omitted) (holding that a state trooper acting within the scope of his duties is protected by sovereign immunity from intentional infliction of emotional distress claims)). Given this settled case law, Allen's intentional infliction of emotional distress claim fails as a matter of law and should be dismissed.

Likewise, with respect to any state law negligence claims, the Commonwealth of Pennsylvania has explicitly retained its sovereign immunity and has not waived immunity except in the above-mentioned ten circumstances. 42 Pa.C.S. § 8522(b). None of these narrow exceptions appears to have any application to the facts and circumstances of this particular case, which involves allegations of negligence arising out of questioning by Trooper Wells after Allen was arrested. Therefore, these negligence claims would also be barred by the doctrine of sovereign immunity.

### ii.  Claims against Judicial Defendants

Allen asserts several claims against Judicial Defendants in their individual and official capacities, including constitutional violations under Section 1983, Title VII claims of race discrimination, and discrimination under the ADA related to judicial proceedings in an underlying criminal case pending against him in the Court of Common Pleas of Cumberland County. (Doc. 1, ¶¶ 13-14, 19); *see Commonwealth v. Allen*, No. CP-21-CR-0001719-2021. (Doc. 1, ¶ 19). The allegations against Judge Brewbaker involve her alleged refusal to appoint a new attorney to represent Allen or allow him to represent himself at trial. (Doc. 1, ¶¶ 13-14, 19). The only allegations against Magistrate Judge Martin are that he presided over Allen's preliminary hearing and appointed a public defender Allen found to be ineffective. (Doc. 1, ¶ 12). Based on these allegations, Allen seeks monetary damages and declaratory relief, including a declaration that Judicial Defendants failed to uphold their oaths. (Doc. 1, at 17-19).

Judicial Defendants first aver that Eleventh Amendment immunity bars Allen's civil rights claims against them. (Doc. 40, at 4). The Eleventh Amendment to the United States Constitution precludes private individual from bringing suit against a state, or one of its

agencies, in federal court. U.S. Const. amend. Xi; *see Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89 (1984). Such immunity may also extend to suits brought against "'arms' of a state." *Patterson v. Pennsylvania Liquor Control Bd.*, 915 F.3d 945, 950 (3d Cir. 2019) (quoting *Karns v. Shanahan*, 879 F.3d 504, 512-13 (3d Cir. 2018)); *Mt. Healthy City Sch. Dist. Bd. Of Edu. v. Doyle*, 429 U.S. 274, 280 (1977) (same). A party is considered an 'arm of the state' for immunity purposes "when 'the state is the real, substantial party in interest.'" *Patterson*, 915 F.3d at 950 (quoting *Ford Motor Co. v. Dep't of Treasury of Ind.*, 323 U.S. 459, 464 (1945), *overruled on other grounds by Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 623 (2002)). Eleventh Amendment immunity "is a jurisdictional bar which deprives federal courts of subject matter jurisdiction," and may be properly considered by way of a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 n. 2 (3d Cir. 1996). "This jurisdictional bar applies regardless of the nature of the relief sought," including suits brought by plaintiffs in equity. *Pennhurst*, 465 U.S. at 100 (citing *Missouri v. Fiske*, 290 U.S. 18, 27 (1933)).

Eleventh Amendment protection is not absolute, however. A state's sovereign immunity may be relinquished through (1) waiver by a state's consent to suit against it in federal court and (2) the abrogation of such immunity by an act of Congress. *Pennhurst*, 465 U.S. at 99. Notably, the Commonwealth of Pennsylvania "has not waived its immunity in § 1983 civil rights cases and Congress did not abrogate state immunity in general in enacting civil rights legislation, including § 1983." *O'Hara v. Ind. Univ. of Pa.*, 171 F. Supp. 2d 490, 495 (W.D. Pa. 2001); *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 66-67 (1989); *see also Boykin v. Bloomsburg Univ. of Pa.,* 893 F. Supp. 378, 394 (M.D. Pa. 1995), *aff'd,* 91 F.3d 122 (3d Cir. 1996) (finding there is no abrogation of sovereign immunity intended in 42 U.S.C. §§ 1981,

1983, 1985 and 1986); *Muhammad v. Dempsey*, No. 3:11-CV-350, 2011 WL 4905513, at *3 (M.D. Pa. Oct. 14, 2011), *aff'd*, 531 F. App'x 216 (3d Cir. 2013) (As the Supreme Court "has rejected the idea that the Eleventh Amendment does not apply to § 1983 . . . this would logically apply to § 1985 as well, because both statutes are part of the Reconstruction Civil Rights Acts and were passed with the same congressional intent.") (internal citations omitted).

   Here, Judicial Defendants assert that they are state entities for Eleventh Amendment purposes. (Doc. 40, at 4). The Third Circuit Court of Appeals has held that Pennsylvania's state courts, as a part of the Commonwealth's unified judicial system, are immune from suit in federal court pursuant to the Eleventh Amendment. *Banks v. Court of Common Pleas FJD*, 342 F. App'x 818, 820 (3d Cir. 2009) (citing *Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 240-41 (3d Cir. 2005)). This immunity extends to Pennsylvania's Supreme Court and its Courts of Common Pleas, such as the Court of Common Pleas of Cumberland County. *Banks,* 342 F. App'x at 820; *see also* 42 Pa.C.S.§ 102; *Callahan v. City of Philadelphia*, 207 F.3d 668, 672 (3d Cir. 2000). Eleventh Amendment immunity also applies to Pennsylvania's magisterial district courts. *Richardson v. Wilkinsburg Police Dep't*, No. 16-0129, 2016 WL 4141084, at *3 (W.D. Pa. Aug. 4, 2016) (citing 42 Pa.C.S. § 301(9)). Thus, because demanding relief from the respective Judicial Defendants would be tantamount to demanding relief from the state itself, the Eleventh Amendment bars any claims that Allen may desire to pursue against them under 42 U.S.C. § 1983. *See Boykin*, 893 F. Supp. at 394.

   In their motion to dismiss, Judicial Defendants next argue that they are immune from liability for all acts taken in their individual capacities. (Doc. 40, at 7-8). "A judicial officer in the performance of his [or her] duties has absolute immunity from suit and will not be liable

for his [or her] judicial acts." *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006) (per curiam). This immunity extends to *all* claims based on judicial actions, regardless of whether they are asserted against judges in their official or individual capacities. *See Dongon v. Banar*, 363 F. App'x 153, 155 (3d Cir. 2010) ("[J]udges are entitled to absolute immunity from liability based on actions taken in their official judicial capacity.") (quoting *Briscoe v. LaHue*, 460 U.S. 325, 334 (1983)). Notably, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978) (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351 (1871)); *Pierson v. Ray*, 386 U.S. 547, 554 (1967) ("This immunity applies even when the judge is accused of acting maliciously and corruptly . . . ."); *Gallas v. Supreme Court*, 211 F.3d 760, 769 (3d Cir. 2000) (A judge is not divested of judicial immunity merely because his or her actions were "unfair or controversial"). Although the Supreme Court has acknowledged that the operation of judicial immunity may at times constitute unfairness to a wronged litigant, "it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'" *Mireles v. Waco*, 502 U.S. 9, 12 (1991) (per curiam) (quoting *Bradley*, 80 U.S. (13 Wall.) at 347).

In the case at bar, Allen describes Judicial Defendants' actions during court proceedings, including his preliminary hearing, appointment of counsel, and a telephonic conference call. (Doc. 1, ¶¶ 12-14). Allen asserts that when he invoked his constitutional right to self-representation and trial by jury, "Judge Brewbaker mocked Mr. Allen, telling him that he didn't know what he was doing, he didn't know the law, and ordered him to be quiet to

prevent his protests about counsel from being heard by other video conferences coming online." (Doc. 1, ¶ 13). Even when construed in the light most favorable to Allen, it is evident that his allegations pertain to actions undertaken by the individual Judicial Defendants in their official capacities as state court judges. *See e.g.*, *Stump*, 435 U.S. at 356 ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority, [nor] if his exercise of authority is flawed by the commission of grave procedural errors"); *Wirfel v. Leahey*, 351 F. App'x 735, 737 (3d Cir. 2009) (finding a plaintiff's "claim of judicial error is not sufficient to overcome the application of judicial immunity," despite allegations that the judge's actions and orders were "incompetent and clearly against the law"); *Tarapchak v. Lackawanna Cty.*, 173 F.Supp.3d 57, 72 (M.D. Pa. 2016) (finding that "immunity attaches [to § 1985 claims] when the judicial act is taken in furtherance of an alleged conspiracy."); *Winston v. Morgan*, No. 1:09-CV-225-SJM, 2010 WL 3620400, at *5 (W.D. Pa. Sept. 13, 2010) (finding that judge was entitled to judicial immunity because "the actions in presiding over the Plaintiff's jury selection is [ ] a clear judicial function."). Although Allen may not agree with their unfavorable decisions while presiding over his state court proceedings, the actions he complains of are judicial in nature and fall within the jurisdiction of each respective Judicial Defendant. *See* 42 Pa. C.S.A. § 931(a) (providing that judges of the Commonwealth's Courts of Common Pleas have unlimited original jurisdiction over all actions and proceedings); 42 Pa. C.S.A. § 1515(a)(4) (providing that Magisterial District Judges have jurisdiction over preliminary matters in criminal proceedings); *see also Fox v. Castle*, 441 F. Supp. 411, 413 (M.D. Pa. 1977) (providing that judicial immunity specifically applies to judicial actions, including ruling on bail requests, making probable cause determinations, and presiding over preliminary hearings in state

criminal cases). Even when taken as true, there are no plausible allegations set forth in the complaint that Judicial Defendants acted in the "clear absence of all jurisdiction" while adjudicating Allen's underlying criminal case. Absolute judicial immunity thus extends to these Defendants, as Allen's claims against them under the ADA and 42 U.S.C. § 1983 relate to judicial actions performed within their jurisdictional authority.

Accordingly, all § 1983 and ADA claims against Judicial Defendants in their individual and official capacities are dismissed with prejudice under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, as these parties are immune from liability in federal court.

### iii. Claims against Medical Defendants

Allen asserts an Eighth Amendment claim against Medical Defendants for deliberate indifference to a serious medical condition. (Doc. 1, ¶ 18). Allen alleges Medical Defendants "provided him an inadequate level of medical care for his burn injuries based on his African-American race and Mr. Allen's particular vulnerability as a confined, mentally disabled person in violation of the Due Process and Equal Protection Clauses of the Federal Constitution." (Doc. 1, ¶ 18). Allen further alleges the conduct of Medical Defendants "constituted the state torts of willful misconduct and negligence and asks the Court to exercise supplemental jurisdiction over such state tort claims." (Doc. 1, ¶ 18). As relief, Allen seeks monetary damages and declaratory relief. (Doc. 1, at 17-19).

To sustain an Eighth Amendment claim, Allen must plead facts which:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* "Deliberate indifference" is a subjective standard under

Farmer-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

*Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001).

By including a subjective intent component in this Eighth Amendment benchmark, the courts have held that a mere generalized knowledge that prisons are dangerous places does not give rise to an Eighth Amendment claim. *See Jones v. Beard*, 145 F. App'x 743 (3d Cir. 2005) (finding no Eighth Amendment violation where inmate-plaintiff complained about cellmate who had a history of psychological problems, but where plaintiff failed to articulate a specific threat of harm during the weeks prior to an attack). In short, when "analyzing deliberate indifference, a court must determine whether the prison official 'acted or failed to act despite his knowledge of a substantial risk of serious harm.' A prisoner plaintiff must prove that the prison official 'knows of and disregards an excessive risk to inmate health or safety.'" Garvey v. Martinez, 08-2217, 2010 WL 569852, at *6 (M.D. Pa. Feb. 11, 2010) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 841 (1994)).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care. In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. *Estelle*, 429 U.S. at 105. To establish a violation of his constitutional right to adequate medical care in accordance with this standard, Allen is required to allege facts that demonstrate (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical

reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury," *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice standing alone is not a constitutional violation. *Estelle*, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." *Durmer*, 991 F.2d at 67 (citations omitted). Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. *Clark v. Doe*, No. 99-CV-5616, 2000 WL 1522855, at *2 (E.D. Pa. Oct. 13, 2000) ("[C]ourts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care."). Thus, such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference." *Gindraw v. Dendler*, 967 F. Supp. 833, 836 (E.D. Pa. 1997) (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.")). Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received, particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services. *See, e.g., Ham v. Greer*, 269 F. App'x 149 (3d Cir. 2008); *James v. Dep't of Corrections*, 230 F. App'x 195 (3d.

Cir. 2007); *Gillespie v. Hogan*, 182 F. App'x 103 (3d Cir. 2006); *Bronson v. White*, No. 05-2150, 2007 WL 3033865 (M.D. Pa. Oct. 15, 2007); *Gindraw*, 967 F. Supp. at 836.

Furthermore, it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. *Tillery v. Noel*, No. 3:18-CV-783, 2018 WL 3521212, at *5 (M.D. Pa. June 28, 2018), *report and recommendation adopted,* No. 3:18-CV-0783, 2018 WL 3518459 (M.D. Pa. July 20, 2018) (collecting cases). Therefore, where a dispute in essence entails nothing more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as a constitutional claim under § 1983, since "the exercise by a doctor of his professional judgment is never deliberate indifference." *Gindraw*, 967 F. Supp. at 836 (citations omitted); *see e.g., Gause v. Diguglielmo*, 339 F. App'x 132 (3d Cir. 2009) (dispute over choice of medication does not rise to the level of an Eighth Amendment violation); *Innis v. Wilson*, 334 F. App'x 454 (3d Cir. 2009) (same); *Rozzelle v. Rossi*, 307 F. App'x 640 (3d Cir. 2008) (same); *Whooten v. Bussanich*, 248 F. App'x 324 (3d Cir. 2007) (same); *Ascenzi v. Diaz*, 247 F. App'x 390 (3d Cir. 2007) (same).

In relevant part, the complaint asserts that after three days in custody following the June 27, 2021, incident, he was examined by an unidentified registered nurse who "declared" that he had suffered third degree chemical burns over his body. (Doc. 1, ¶ 10). That unidentified nurse then referred Allen to be evaluated by a physician's assistant, whom it is believed is Toby Catone, PA-C, a healthcare provider at the Cumberland County Prison. (Doc. 1, ¶ 10). Allen claims that when PA Canton came to examine Allen, "his skin was blistered in some areas, sloughing off his body in other areas." (Doc. 1, ¶ 10). PA Catone evaluated Allen, and she informed him that his perception of his problem was related to the

color of his skin and that he had fungus and dirt on his skin. (Doc. 1, ¶ 10). Allen claims that

he requested an evaluation by a burn unit, notwithstanding the diagnosis made by PA Catone,

and that "the physician's assistant and supervising physician" denied his request. (Doc. 1, ¶

10). Allen states the alleged "burns healed on their own without proper medical attention over

a period of approximately 4 to 6 weeks, during which time Mr. Allen suffered through

substantial pain as his skin cracked and bled repeatedly." (Doc. 1, ¶ 10). Notably, there is no

allegation that Dr. Cattell evaluated Allen, however, it is alleged Dr. Cattell is PA Catone's

supervising physician. (Doc. 1, ¶ 10).

Fairly construed, the complaint fails to state a viable Eighth Amendment claim for

failure to appropriately treat or respond to a known, and serious, medical condition by

Medical Defendants. Allen's recitation of facts involve precisely the sort of disagreement

between an inmate and his caregivers regarding the proper course of treatment. Allen appears

to be dissatisfied with PA Catone's determination that any discoloration is related to his skin

color and the presence of fungus and dirt, rather than Allen's assertion that he was covered in

burns. Further, according to Allen, he has completely healed from any medical condition and

is no longer suffering with any maladies. Moreover, Allen does not assert facts to establish

the personal involvement of Dr. Cattell, who did not evaluate Allen. Allen merely disagrees

with a physician's decision to not send Allen to a burn center to be evaluated.

Allen is required to show "acts or omissions sufficiently harmful to evidence deliberate

indifference to serious medical needs." *Estelle*, 429 U.S. at 106. Here, there is simply no record

evidence that any member of Medical Defendants' displayed behavior amounts to conscious

disregard for a serious risk or an intentional refusal to provide care. Allen does not cite any

record evidence that shows any Medical Defendants deliberately refused to provide him

treatment, deliberately delayed treatment, prevented him from receiving necessary or recommended treatment, or deliberately persisted in a particular course of treatment "in the face of resultant pain and risk of permanent injury." *Rouse*, 182 F.3d at 197 (quoting *White*, 897 F.2d at 109-11). Allen may disagree with his treatment or adequacy of the treatment he received while incarcerated at Cumberland County Prison. However, his disagreement in opinion is not enough to raise an inference of deliberate indifference. Without any evidence lending itself in favor of the variety of instances where the Third Circuit has found deliberate indifference, Allen cannot satisfy the standard for establishing a violation under the Eighth Amendment.

Accordingly, Allen's claims against Medical Defendants are dismissed for failure to state a claim upon which relief may be granted.

iv.    Claims against Cumberland County Defendants

Allen asserts claims against Cumberland County Defendants pursuant to 42 U.S.C. § 1983 alleging deprivations of his civil rights. (Doc. 1). The complaint sets forth the following assertions of fact regarding Cumberland County Defendants. At his preliminary hearing on July 8, 2021, APD Renard was court-appoint to represent Allen. (Doc. 1, at 11-12). Allen claims APD Renard induced him to waive his right to a preliminary hearing with a quid pro quo offer that his case would be sent to the local mental health or "TOMS" court docket, which either the Commonwealth or counsel later reneged on. (Doc. 1, at 12). Allen claims APD Renard's inducement was both unreasonable and constituted an act of misrepresentation in that the affidavit of probable cause was factually insufficient as to the charge of arson endangering property and reckless endangerment of inhabited buildings. (Doc. 1, at 12). On November 19, 2021, Allen appeared for his next court proceeding,

which was conducted via two-way advanced communications technology, as Allen was at the county prison and Judge Brewbaker, ADA Metzger, and APD Renard were at the Cumberland County Courthouse. (Doc.1, at 12-13). Allen alleges that during the November 19, 2021, conference, he informed Judge Brewbaker that he did not want to be represented by APD Renard and requested that he be able to represent himself, which Judge Brewbaker denied. (Doc. 1, at 12-13). On December 3, 2021, Allen appeared for another court hearing, which was initially conducted via two-way advanced communications, and APD Renard informed Allen that they were picking a jury that day. (Doc. 1, at 13). Allen demanded that he be transported to court, which he was. (Doc. 1, at 13). During the court proceeding, Allen indicated that he wanted to represent himself and was not permitted to participate in a sidebar conference with Judge Brewbaker, ADA Metzger, and APD Renard. (Doc. 1, at 13-14).

Allen's claims against Cumberland County Defendants allege that: (1) ADA Metzger acted at the direction of, and with the express authority of DA Ebert; and (2) ADA Metzger, Judge Martin, APD Renard, and Judge Brewbaker have acted in concert to deny him the right to effective assistance of counsel, right to a fair and impartial tribunal, the right of confrontation, the right to trial by jury, and the right to the equal protection and due process of the law based on his African-American race and mental disability. (Doc. 1). Allen further alleges that their conduct constitutes "willful misconduct, negligence, intentional misrepresentation, fraud, and intentional infliction of emotional distress under Pennsylvania's Second Restatement of Torts." (Doc. 1, at 17). As relief, Allen seeks declaratory judgment that the "state government officials violated and continue to violate the oaths or affirmations each of them swore to support, obey, and defend the Federal Constitution under Article VI of the same." (Doc. 1, at 18). In addition, Allen seeks

declaratory relief against APD Renard "that this Defendant deliberately misrepresented and breached her duty of loyalty to Mr. Allen as criminal defense counsel by inducing Mr. Allen to waive valuable rights in violation of the Federal Constitution," as well as injunctive relief against APD Renard "enjoining the Office of Disciplinary Counsel of the Supreme Court of Pennsylvania to conduct a thorough investigation into whether this Defendant committed professional misconduct ad should be either suspended or disbarred." (Doc. 1, at 18-19).

First, Allen's claims against his own attorney, APD Renard, are precluded. It is well-settled that "public defenders and court-appointed counsel acting within the scope of their professional duties are absolutely immune from civil liability under § 1983." *Walker v. Pennsylvania*, 580 F. App'x 75, 78 (3d Cir. 2014) (quoting *Black v. Bayer*, 672 F.2d 309, 320 (3d Cir. 1982)). This immunity arises from the fact that a criminal defense attorney, even if employed by the state as a public defender, "does not act under color of state law when performing a lawyer's traditional functions." *Polk Cty. v. Dodson*, 454 U.S. 312, 318 (1981). Accordingly, Allen's claims against APD Renard shall be dismissed on this basis.

In addition, the Court notes that Allen's claims for ineffective assistance of counsel are properly brought under the Post-Conviction Relief Act. *See* 42 Pa. C.S. § 9541, *et seq*. Further, to bring a civil action for damages under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him of his constitutional rights. Private attorneys, including public defenders, acting on behalf of their clients are not state actors, and therefore, cannot be held liable under § 1983. *See Polk Cty.*, 454 U.S. at 325 (public defender not a state actor "when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding"); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 787 F. Supp. 471, 475 (E.D. Pa. 1992) (attorneys are not state actors by virtue of status as officers of the court). Presently,

there are no allegations to satisfy these requirements. As a result, Allen has not pleaded a sufficient legal basis for relief predicated upon a civil rights ineffective assistance of counsel claim. Accordingly, Allen's claim for ineffective assistance of counsel against APD Renard is dismissed.

Second, Allen's § 1983 claims against DA Ebert and ADA Metzger must be dismissed on the doctrine of absolute prosecutorial immunity. This doctrine protects prosecutors from liability related to their official acts. *Imbler v. Pachtman*, 424 U.S. 409, 417-20 (1976). "More than a mere defense to liability, prosecutorial immunity embodies the right not to stand trial." *Odd v. Malone*, 538 F.3d 202, 207 (3d Cir. 2008) (internal quotations and citations omitted). Under this doctrine, a prosecutor is absolutely immune from liability for money damages under § 1983 for acts "within the scope of his duties in initiating and pursuing a criminal prosecution." *Imbler*, 424 U.S. at 410. "Ultimately, whether a prosecutor is entitled to absolute immunity depends on whether she establishes that she was functioning as the state's 'advocate' while engaging in the alleged conduct that gives rise to the constitutional violation." *Yarris v. Cty. of Del.*, 465 F.3d 129, 136 (3d Cir. 2006) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 274 (1993)).

Applying these principles to the instant case, the Court concludes that DA Ebert's and ADA Metzger's actions are protected by the doctrine of absolute prosecutorial immunity. Allen's lone allegations are that ADA Metzger, acting acted at the direction of, and with the express authority of DA Ebert, and in concert with Judge Martin, APD Renard, and Judge Brewbaker, denied Allen the right to effective assistance of counsel, right to a fair and impartial tribunal, the right of confrontation, the right to trial by jury, and the right to the equal protection and due process of the law based on his African-American race and mental

disability. (Doc. 1). However, the complaint contains no factual allegations that supports the assertion that DA Ebert and ADA Metzger exceeded the scope of their duties. Their decision to pursue criminal prosecution against Allen is "within the scope of [their] duties in litigating and pursuing a criminal conviction." *Imbler*, 424 U.S. at 410. Accordingly, DA Ebert and ADA Metzger are entitled to absolute prosecutorial immunity in relation to Allen's allegations set forth in the complaint.

Next, the Court finds that Cumberland County Defendants are shielded from Allen's state law claims of "willful misconduct, negligence, intentional misrepresentation, fraud, and intentional infliction of emotional distress under Pennsylvania's Second Restatement of Torts." (Doc. 1, at 17). The common law doctrine of high public official immunity provides that "high public officials are immune from suits seeking damages for actions taken or statements made in the course of their official duties." *Durham v. McElynn*, 772 A.2d 68, 69 (Pa. 2001). The Pennsylvania Supreme Court has explicitly extended such protections to prosecutors performing their official duties. *Durham*, 772 A.2d at 70. Pennsylvania's high public official immunity is "similar" to the federal absolute prosecutorial immunity standard. *See Stokes v. City of Philadelphia,* No. CV 22-0338, 2022 WL 16578285, at *4 (E.D. Pa. Oct. 31, 2022) (citation omitted).

Here, just as the Court has determined that Cumberland County Defendants are entitled to absolute immunity from Allen's § 1983 claims, they are likewise immune from Allen's state-law claims. As explained above, Cumberland County Defendants' conduct did not exceed the scope of their duties. Therefore, Cumberland County Defendants are entitled to absolute immunity from liability for the alleged conduct. *See Durham*, 772 A.2s at 70.

Accordingly, Allen's state law claims against Cumberland County Defendants are dismissed with prejudice.

v.     <em>Younger</em> Abstention Applies Here

Finally, the complaint also seemingly invited the Court to intervene in the pending state court case. (Doc. 1, at 17-19). To the extent that Allen invites the Court to enjoin aspects of a pending state case, this *pro se* complaint runs afoul of a settled tenet of federal law, the *Younger* abstention doctrine.

The *Younger* abstention doctrine is inspired by basic considerations of comity that are fundamental to the federal system of government. As defined by the courts: "*Younger* abstention is a legal doctrine granting federal courts discretion to abstain from exercising jurisdiction over a claim when resolution of that claim would interfere with an ongoing state proceeding." *Kendall v. Russell*, 572 F.3d 126, 130 (3d Cir. 2009) (citing *Younger v. Harris*, 401 U.S. 37, 41 (1971) ("[W]e have concluded that the judgment of the District Court, enjoining appellant Younger from prosecuting under these California statutes, must be revered as a violation of the national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances.")).

This doctrine, which is informed by principles of comity, is also guided by these same principles in its application. As the Third Circuit has observed:

> "A federal district court has discretion to abstain from exercising jurisdiction over a particular claim where resolution of that claim in federal court would offend principles of comity of interfering with an ongoing state proceeding." *Addiction Specialties, Inc. v. Twp. Of Hampton*, 411 F.3d 399, 408 (3d Cir. 2005) (citing *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L.Ed.2d 669 (1971)). As noted earlier, the *Younger* doctrine allows a district court to abstain, but that discretion can properly be exercised only when (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate

opportunity to raise federal claims. *Matusow v. Trans-County Title Agency, LLC*, 545 F.3d 241, 248 (3d Cir. 2008).

*Kendall*, 572 F.3d at 131.

Once these three legal requirements are met, the decision to abstain rests in the sound discretion of the district court and will not be disturbed absent an abuse of that discretion. *Lui v. Commission on Adult Entertainment Establishments*, 369 F.3d 319, 325 (3d Cir. 2004). Moreover, applying these standards, federal courts frequently abstain from hearing requests for injunctive relief which necessarily interfere with ongoing state criminal cases. *Lui*, 369 F.3d at 325.

In this case, Allen's complaint reveals that all of the legal prerequisites for *Younger* abstention are present here with respect to those claims that seek to interfere with ongoing state cases. First, it is evident that there are state proceedings in this case. Second, it is also apparent that those proceedings afford Allen a full and fair opportunity to litigate some of the issues raised in this lawsuit in the state case. *See Sullivan v. Linebaugh*, 362 F. App'x 248, 249-50 (3d Cir. 2010). Finally, it is clear that the state proceedings implicate important state interests, since these matters involve state criminal law enforcement, an issue of paramount importance to the state. *See, e.g., Lui*, 369 F.3d at 325.

Since the legal requirements for *Younger* abstention are fully met here, the decision to abstain from addressing these requests for injunctive relief in the sound discretion of the Court. *Lui*, 369 F.3d at 325. Given the important state interest in enforcement of its criminal laws and recognizing that the state courts are prepared to fully address the merits of these matters, the Court finds that the proper exercise of this discretion weighs in favor of abstention and dismissal of Allen's requests for injunctive relief. *Lui*, 369 F.3d at 325.

### 7. Balancing of Poulis factors

To reiterate, when weighing the *Poulis* factors, there is no "magic formula" or "mechanical calculation" that automatically warrants dismissal for failure to prosecute. *Briscoe,* 538 F.3d at 263. Quite the contrary, the Court is guided by the Third Circuit's warning that "no single *Poulis* factor is dispositive," and that "not all of the *Poulis* factors need be satisfied in order to dismiss a complaint." *Ware,* 322 F.3d at 222; *Mindek,* 964 F.2d at 1373. Here, on balance, the *Poulis* factors weigh heavily in favor of dismissal of this action for lack of prosecution. Therefore, the Court will dismiss this action pursuant to Fed. R. Civ. P. 41 (b) and the *Poulis* factors.

## IV.   CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' motions to dismiss (Doc. 34; Doc. 36; Doc. 38; Doc. 43) are deemed unopposed and Allen's complaint (Doc. 1) is **DISMISSED** pursuant to Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute. Further, the Clerk of Court is directed to **CLOSE** this action.

An appropriate Order follows.


**Dated:** June 7, 2023

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**Chief United States Magistrate Judge**